J. W. Scott, Plaintiff in Error, v. First National Bank of Englewood, Defendant in Error.

### Gen. No. 14,631.

CONTRACTS—*what not part of architect's certificate.* A statement appended to an architect's certificate and not formally incorporated therein, *held,* not a part of such certificate and not an authorization to the owner to refuse to pay the face of the certificate.

*Assumpsit.* Error to the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and judgment here. Opinion filed November 19, 1909. Rehearing denied November 30, 1909.

Statement by the Court. The plaintiff in error, J. W. Scott, was engaged in the business of manufacturing and erecting structural iron under the name of American Iron & Wire Works. On September 27, 1906, he entered into a written contract with the First National Bank of Englewood, defendant in error, for the structural iron work on a bank building to be erected at Nos. 443 to 445 West 63rd street, Chicago. The contract price was $3460. Julian Barnes was

named in the contract as the architect under whose directions the work was to be done, and specifications prepared by him were attached to and made a part of the contract.

The contract specifies the work to be done, and provides that the architect's decision as to the true construction and meaning of the drawings and specifications shall be final; and that payments were to be made for the work and materials on the architect's certificates.

Article 5 of the contract provides:

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architect, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner, the expense incurred by

the owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties.''

Article 6 of the contract fixes the time for the completion of the work as follows:

''He shall have the basement columns and the first floor beams in place in the building on or before the 15th day of October, 1906, and shall wholly complete the work on or before the 15th day of November, 1906, providing the walls of the building are in readiness to receive his work at the time specified. Should the contractor fail to complete the several portions of the work at the time specified then he shall forfeit to the owner the sum of Twenty-five Dollars ($25) for each and every day thereafter that the work remains unfinished, as and for liquidated damages.''

The walls of the building were not in readiness to receive the structural iron at the time specified. The evidence on the part of plaintiff in error tends to show that for that reason he could not begin the work specified in the contract until October 18, 1906, and that he was unable to complete it until the following March.

In the latter part of November the carpenter contractor began preparations to build the wooden trusses for the support of the roof. The shoes, rods, bolts, etc., for use in putting together these trusses, were to be furnished by plaintiff in error under the contract, and were not at that time ready for use. There is a controversy in the evidence as to the time when the plaintiff in error was notified that the carpenter contractor would be ready for the truss irons. Plaintiff in error made his first delivery of truss irons November 26, 1906, and the last delivery on December 8, 1906.

On May 15, 1907, plaintiff in error's work having been completed, Barnes, the architect, gave him a final certificate to the effect that he was ''entitled to a final

payment of $517.62 by the terms of the contract.'' Under the signature of the architect was written on the certificate the following: ''Remarks:    This contractor delayed the work of the building twelve days, for which the contract provides a forfeiture of twenty-five dollars per day as liquidated damages.''

When plaintiff in error presented this certificate for payment, the defendant in error offered to pay him $217.62, but refused to pay the additional $500 called for by the certificate.

GIDEON S. THOMPSON, for plaintiff in error.

WILLIAM A. DOYLE, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The controversy here involved arises from the attempt on the part of the architect and owner to fix damages for delay in the work, and deduct the amount thereof from the balance due plaintiff in error on the completion of his contract.

The only authority for this in the contract is found in article 6 quoted above.    Upon a reading of that article it will be observed at once that the obligation to complete the several portions of the work as specified, is conditioned upon the walls of the building being in readiness to receive plaintiff in error's work at the specified times.    No forfeiture or penalty can be exacted under the provisions of the contract unless the walls were in readiness as therein provided.    There is no provision in the contract which we have been able to discover which authorizes or provides for a penalty of $25 a day for delaying the work of other contractors or for delaying the completion of the building, other than for a failure to place the basement columns and first floor beams in the building on or before October 15, 1906, and to complete the work on or before November 15, 1906; and this provision is enforceable

only, if the walls of the building were in readiness to receive the work of plaintiff in error. If the walls of the building were not in condition to receive the work on the days named, no expressed limitations as to the time of doing the work or any part of it are made in the contract.

The evidence in the record shows that the walls were not ready to receive plaintiff in error's work at the dates specified. As to this fact it may be said on the record that it is not controverted. It follows that if the remarks appended to the architect's certificate can be treated or considered as a part of the certificate, the contract does not confer the power on the architect to declare a forfeiture of $25 per day for delaying the work on the building, and deduct the amount thereof, as liquidated damages, from the amount due plaintiff in error, the condition on which such a forfeiture was enforceable having never existed. We infer from the form of the certificate, and the fact that the appended statement was not formally incorporated in the certificate and a deduction made from the amount due and signed by the architect, that he did not construe the contract as giving him the power to make the deduction. But, however that may be, we do not think the appended remarks are a part of the certificate, and therefore there was no ground or basis for defendant in error to refuse to pay the amount of the face of the certificate on presentation thereof to it for payment.

Furthermore, upon consideration of all the evidence we do not think it is shown that plaintiff in error delayed the completion of the building twelve days. In our opinion the trial court erred in not finding for the plaintiff in error and against the defendant in error for the sum of $517.62, the face of the certificate, and costs, and rendering judgment therefor. The judgment must therefore be reversed and a judgment rendered in this court for $517.62 and interest thereon from the date of the demand for payment, amounting to $582.37.    *Reversed and judgment in this court.*